# EXHIBIT B

commercial purposes, with acknowledgement of UNESCO Cultural Heritage Laws Database as the source (© UNESCO).

# Law on the Protection of Cultural Heritage

NS/RKM/0196/26

# We,

Preah Bat Samdech Preah Norodom Sihanouk Varman Rajbarivong Ubhato Socheathi Visothipong Akamohaborohrathn Nikarodom Dhamikmoharaja Thiraj Boromaneath Borombopithr Preah Chau Krung Kampuchea Thipadei, having regard to:

- the Constitution of the Kingdom of Cambodia,
- the Royal Decree of 1 November 1993 establishing the Royal Government of the Kingdom of Cambodia,
- the Royal Decree of 24 November 1993 nominating the First Prime Minister and the Second Prime Minister of the Council of Ministers,
- the Royal Kram n° 2/NS/ of 20 July 1994 establishing and defining the functioning of the Council of Ministers,
- the Royal Decree NS/RKT/1094-83 of 24 October 1994 redefining the com-position of the Royal Government of Cambodia,
- the Royal Kram n° 04/NS/94 of 10 August 1994 concerning Territorial Management, Urban Planning and Construction,
- the Royal Decree n° NS/RKT/0295 of 19 February 1995 redefining of the Supreme Council on National Culture,
- the Royal Decree of 19 February 1995 establishing the Authority for the Protection and Management of Angkor and the Region of Siem Reap (APSARA),
- the Royal Decree n° 001/NS of 28 May 1994 concerning the zoning and management of the region of Siem Reap/Angkor,
- the Law establishing the Ministry of Culture and Fine Arts adopted by the National Assembly on 25 October 1995,
- the proposal of the two Prime Ministers, and the Minister of State for Culture and Fine Arts, Territorial Management, Urban Planning and Construction,

## Promulgate

the Law on the Protection of Cultural Heritage adopted by the National Assembly during the first session of its fifth mandate, which reads as follows:

# Chapter 1- General provisions

**Article 1**:

commercial purposes, with acknowledgement of UNESCO Cultural Heritage Laws Database as the source (© UNESCO).

The purpose of this law is to protect national cultural heritage and cultural property in general against illegal destruction, modification, alteration, excavation, alienation, exportation or importation.

## Article 2:

The national cultural heritage comprises cultural property created or discovered on national territory;

## Article 3:

This law shall apply to moveable and immoveable cultural property, whether publicly or privately owned, whose protection is in the public interest. Except as otherwise provided elsewhere in this law, it shall apply only to cultural property that forms part of the national cultural heritage.

## Article 4:

For the purposes of this law, cultural property is considered to be any work produced by human agency and any natural phenomenon of a scientific, historic, artistic or religious nature which bears witness to a certain stage in the development of a civilization or of the natural world and whose protection is in the public interest. Specific cultural property is to be registered by sub-decree.

# Chapter 2 - Special provisions

## Section 1: Institutions Responsible for Management and Implementation

## Article 5:

The Supreme Council on National Culture is responsible for policy formulation in the domain of national cultural property, in particular in view of protecting and enhancing the national cultural heritage. The Ministry of Culture and Fine Arts is responsible for policy implementation. However in the Angkor/Siem Reap region, the Authority for the Protection and Management of Angkor and the Region of Siem Reap, called APSARA, is responsible for the protection, the preservation and the enhancement of the national cultural heritage. Coordination of work carried out jointly by the Ministry of Culture and Fine Arts and concerned institutions is to be defined by sub-decree.

## Section 2: Protected sites

## Article 6:

Protected sites containing archaeological reserves or other sites of archaeological, anthropological or historic interest may be established. The boundaries of such protected sites shall be defined by Royal

commercial purposes, with acknowledgement of UNESCO Cultural Heritage Laws Database as the source (© UNESCO).

Decree at the proposal of the SCNC.

## Section 3: Inventory

### Article 7:

Listing in the inventory consists of keeping a record of public and private cultural property which, while not necessarily requiring immediate classification, is nonetheless of some importance from a scientific, historical, artistic or religious point of view.

### Article 8:

Inscription in the inventory shall be made by a decision of the competent authority according to Article 5.

### Article 9:

Inscription in the inventory shall place an obligation on the owner or holder of the property to inform the competent authority one month prior to taking any action to alienate, move, destroy, modify, alter, repair or restore the property. The competent authority may oppose such action only by initiating the procedure for classification.

### Article 10:

Inscription in the inventory shall be null and void unless it is followed by a proposal for classification in the six months following notification thereof.

## Section 4: Classification

### Article 11:

Classification is the registration of public or private cultural property which has already been inventoried and whose protection is in the public interest from a scientific, historical, artistic or religious point of view.

### Article 12:

A proposal for classification shall be made by the competent authority, which shall duly notify the owner or holder of the property.

### Article 13:

commercial purposes, with acknowledgement of UNESCO Cultural Heritage Laws Database as the source (© UNESCO).

The proposal for classification shall be null and void unless it is followed by a decision to classify in the twelve months following notification.

**Article 14:**

Classification shall be made by a decision of the competent authority. The competent authority must take a decision within three months after having notified the owner or holder of the property of the proposal to do so.

**Article 15:**

The owner or holder of the property shall be notified of the classification and, where appropriate, the Land Conservation Department (the depart-ment responsible for managing the Land Register) shall also be notified.

**Article 16:**

In the absence of the owner's consent, the classification shall be made auto-matically.

**Article 17:**

Classification may give rise to the payment of an indemnity in order to compensate for any loss likely to be caused. The request must be submitted to the competent authority within three months of the notification of the classification decision. The amount of the indemnity shall be set by the competent authority. Any objections concerning the decision as to entitlement or as to the amount of the indemnity shall be brought before the appropriate judicial authorities.

**Article 18:**

The competent authority shall draw up a list of cultural property classified at the end of each year. That list, organized by Province and published in an official Gazette, shall indicate:

- the nature of the cultural property classified;
- the place where it is located;
- the surnames and first names of its owner;
- the date of classification.

**Article 19:**

Classified cultural property is imprescriptible.

APSARA - Law protecting cultural heritage
commercial purposes, with acknowledgement of UNESCO Cultural Heritage Laws Database as the source (© UNESCO).

**Article 20:**

Any classified cultural property of public ownership or belonging to public legal entities is inalienable.

**Article 21:**

Anyone who alienates private cultural property proposed for classification or already classified shall, on pain of nullity of the act of alienation:

- inform the beneficiary of the status of the property before completion of the act of alienation;
- inform the competent authority within fifteen days of the act of alienation by communicating to it the surname, first name and domicile of the person to whom ownership of the property has been transferred, as well as the date of the alienation.

**Article 22:**

The alienation of materials or fragments illegally removed from cultural property that has been classified or proposed for classification, and likewise any act resulting in the transfer of possession or control of such materials or fragments to a third party, shall be null and void. Any such third parties jointly responsible with the owners for returning the materials or fragments conveyed to them to their place of origin shall not be entitled to compensation from public entities.

**Article 23:**

No cultural property that has been proposed for classification or classified may be moved, destroyed, modified, altered, or subjected to repair or restoration work without the authorization of the competent authority, who shall lay down the conditions for such work and monitor its progress.

**Article 24:**

Any owner who requests authorization to alter, repair or restore cultural property that has been proposed for classification or classified must submit to the competent authority all the relevant plans, projects and documents.

**Article 25:**

The owner of a classified cultural property shall be responsible for ensuring its protection. Any expenses resulting from the restoration, repair or maintenance of the property shall be borne by the owner. Such expenses may be reimbursed in part, by the competent authorities. Full reimbursement is subject to decision of the Council of Ministers.

commercial purposes, with acknowledgement of UNESCO Cultural Heritage Laws Database as the source (© UNESCO).

**Article 26:**

The competent authority shall examine any urgent repair or restoration proposed on classified cultural property. Final decision on such work will be made by the Council of Ministers. The owner of the said property may not oppose the execution of such work.

**Article 27:**

The consequences of classification shall take full effect from the date of noti-fication of the proposal for classification. The consequences shall apply to the property notwithstanding any change of ownership.

## Section 5: Rights of preemption and expropriation

**Article 28:**

The competent authority may exercise a right of preemption over the sale of any cultural property which has been inscribed in the inventory, proposed for classification or classified. Any person intending to sell a property mentioned in the previous paragraph must inform the competent authority thereof thirty days in advance.

**Article 29:**

Within thirty days from the date of reception of the information mentioned in Article 28, paragraph 2, the competent authority shall notify the owner of its decision to purchase the property offered for sale on the conditions and at the prices set or to renounce acquisition. The absence of a reply on expiration of the aforementioned thirty days period is deemed to imply that the use of the right of pre-emption has been relinquished.

**Article 30:**

Immoveable cultural property that is inscribed in the inventory, proposed for classification or classified may be expropriated by the competent authority in the manner provided by the law on expropriation in the public interest.

## Section 6: Trade in antiquities

**Article 31:**

Trade in antiquities shall be authorized, on the conditions stipulated in this law after approval by the competent authority. Procedures concerning this trade are to be defined by sub-decree.

commercial purposes, with acknowledgement of UNESCO Cultural Heritage Laws Database as the source (© UNESCO).

**Article 32:**

Trading permits shall include the surname, first name and residence of the dealer, his or her qualifications, the types of object subject to trade, and shall state precisely where the dealer wishes to trade. This permit is valid for one year, renewable annually, and is inalienable.

**Article 33:**

All authorized dealers shall be bound by the following obligations:

- (a) to display a notice at the entrance to their sales premises stating that they are authorized to sell cultural property;
- (b) not to place any cultural property intended for sale outside the premises in which they are authorized to conduct their activity;
- (c) to keep detailed records of the cultural property which they possess, and of day-to-day sales and purchases;
- (d) to make the records mentioned in (c) available to inspectors whenever requested to do so;
- (e) to display in a prominent position on the sales premises the provisions of this law concerning the export of cultural objects;
- (f) to show any cultural property in their possession to inspectors during an inspection;
- (g) to provide inspectors with a photograph of any cultural object in their possession, or to allow them to photograph the cultural object if they so wish;
- (h) to assist inspectors and facilitate their work during an inspection;
- (i) to inform the competent authority of any removal of sales premises to another site.

**Article 34**:

Inspectors may, whenever they deem inspection to be appropriate, enter and inspect the sales premises, examine and itemize the cultural objects located there and consult the records. They also have the right to inspect the residence of the dealer if this is used for storage or as sales premises under the terms of the permit issued to the dealer.

**Article 35:**

The competent authority may withdraw the permit to deal in cultural property if it becomes apparent that the holder thereof is neglecting or violating any one of the holder's obligations, or if the holder has been sentenced by the relevant court for breach of the provisions of this law.

**Article 36:**

Following withdrawal of the permit in accordance with the provisions of Article 35, the dealer must cease purchasing cultural objects. The dealer shall be authorized to sell cultural property still in the

commercial purposes, with acknowledgement of UNESCO Cultural Heritage Laws Database as the source (© UNESCO).

possession of the dealer for a further period not exceeding six months.

## Section 7: Chance discoveries

### Article 37:

When construction work or any other activity bring to light cultural property such as monuments, ruins, ancient objects, remains of inhabited sites, ancient burial sites, engravings or any property likely to be of interest in the study of prehistory, history, archaeology, ethnology, paleontology or other branches of science dealing with the past or of human sciences in general, the person finding the property and the owner of the site where it was discovered are obliged to stop the construction work and immediately make a declaration to the local police, who shall transmit it to the Governor of the province without delay. The Governor shall in turn inform the competent authority and shall take the measures necessary to ensure the protection of the objects and the site.

### Article 38:

The competent authority shall, within thirty days of the declaration mentioned in Article 37, announce the temporary suspension of the work and the safeguarding measures to be taken. If no such measures are announced within that time-limit, the effects of temporary suspension shall no longer apply. The competent authority shall decide on the permanent measures to be taken concerning chance discoveries.

### Article 39:

Moveable cultural property found by chance is public property. The competent authority shall provide within three weeks a reward to the finder of the discovery, the amount of which is to be fixed by agreement or by expert opinion. Section 8: Archaeological excavations

### Article 40:

No one may carry out excavations or surveys, on land or under water, for the purpose of bringing to light cultural property likely to be of relevance to the study of prehistory, history, archaeology, ethnology, paleontology or other branches of science dealing with the past or of human sciences in general, without the prior authorization of the competent authority.

### Article 41:

Only scientific institutions whose expertise is recognized and which have the necessary experience and financial resources may be empowered to carry out excavations. Foreign scientific institutions which have been granted excavation authorization must associate national scientific institutions in their work.

commercial purposes, with acknowledgement of UNESCO Cultural Heritage Laws Database as the source (© UNESCO).

## Article 42:

Any scientific institution which has been granted authorization for excavation must:

- (a) record the cultural objects discovered in a special register to be handed to the competent authority at the end of each field season;
- (b) protect the excavated site and the cultural objects found there, and take all necessary conservation measures;
- (c) inform the competent authority regularly of the progress of the excavation work;
- (d) submit a summary report, accompanied by an album containing photographs of all cultural objects discovered, at the end of each field season campaign;
- (e) submit a detailed scientific report on the findings of the excavations within a period not exceeding one year from the end of each field season;
- (f) allow inspectors to visit the excavations whenever they so wish and to consult the special register mentioned in paragraph (a);
- (g) grant interested researchers access to the excavations, on condition that they respect the scientific ownership rights of the excavator;
- (h) train national technicians and researchers;
- (i) publish the scientific findings of the excavations within five years of completion of the work.

## Article 43:

Any scientific institution in possession of an authorization to carry out excavation shall be entitled to:

- (a) scientific ownership of its discoveries;
- (b) ownership of the cultural objects granted to it under the terms of Article 44, paragraph 2;
- (c) first publication of the scientific findings of the excavations, on condition that those findings are published within the time-limit specified in Article 42, paragraph (i).

## Article 44:

Immoveable and moveable cultural property discovered by scientific institutions shall be the property of the State. The competent Authority may donate to those institutions any object of which duplicates have been found and any object that is not indispensable to public collections owing to the fact that these collections already contain objects of the same type, style, material, method of production and scientific or artistic value. Any such donation can be made only on the condition that concerned objects be displayed in a scientific institution accessible to the public.

## Article 45:

The competent authority shall be responsible for the inspection of excavations and the monitoring of sites, and shall assist in establishing measures to protect sites under excavation.

**Article 46:**

The competent authority may authorize excavations on privately-owned land, after prior notification to the owner. An inventory of the site approved by all parties must be made at the beginning of the excavator's occupation of the site. The excavator may occupy the site for a renewable period of two years.

**Article 47:**

The owner of land covered by Article 46 shall be entitled to return to the site, and to compensation for deprivation of use of the land and for damage caused if any.

**Article 48:**

In the event of discovery of cultural immoveables whose protection is in the public interest, the competent authority may exercise its right of expropriation in accordance with the legislation on expropriation in the public interest.

**Article 49:**

If the authorized excavator fails to respect any one of its obligations as set out in Article 42, the competent authority may decide to withdraw authorization and/or scientific rights. Excavations shall be suspended from the day that the holder is notified of the withdrawal of authorization.

**Article 50:**

Once an excavation authorization has been withdrawn, the concerned party may not claim any compensation for eviction from the site or for any expenses incurred.

## Section 9: Export of cultural property

**Article 51:**

The export of any cultural object from Cambodia is prohibited, unless the competent authority has granted a special export license for the purpose.

**Article 52:**

The competent authority must announce its decision within three months of the declaration made to the competent authorities by the exporter.

## Article 53:

The export of cultural objects shall be subject to duties and fees. The amount of those export duties and fees shall be set by law.

## Article 54:

Before granting an export license, the competent authority must ascertain that:

- (a) the proposed export will not result in the impoverishment of the national cultural heritage;
- (b) public collections contain a cultural object similar to the one for which an export license has been requested;
- (c) the cultural object to be exported is not of irreplaceable importance for a study of a particular branch of study of the sciences of the past or of the human sciences in general. Procedures for export of cultural property, types of cultural property authorized for export, as well as types of cultural property of which export is prohibited shall be defined by sub-decree.

## Article 55:

The competent authority is required to grant a license for the exportation of cultural objects in the following cases:

- objects donated to a foreign scientific institution which holds an excavation permit in accordance with Article 44, paragraph 2;
- objects sent abroad temporarily for exhibition or for other scientific purposes;
- objects exchanged for other objects obtained from museums or similar foreign institutions;
- objects legally imported into Cambodia.

However, in a case provided for in paragraph l (point 2) of this article, the temporary export shall be submitted to appropriate conditions that guarantee the conservation and the return of these objects.

## Article 56:

Any attempt to export cultural objects without a license shall entail the seizure and confiscation of those objects for the public collections.

## Article 57:

The competent authority may claim, on behalf of the public collections for the payment of a fair price decided by mutual agreement or fixed by an expert, any cultural object for which an export license has been denied, provided that there are strong indications that the cultural object may be the subject of a

commercial purposes, with acknowledgement of UNESCO Cultural Heritage Laws Database as the source (© UNESCO).

fraudulent export attempt.

## Section 10: Import of cultural property

### Article 58:

The import of cultural objects exported in contravention of the national legislation of their country of origin is forbidden. Procedures for the importation of cultural property shall be defined by sub-decree.

### Article 59:

Cultural objects imported illegally shall be seized, placed under the protection of the competent authority and, on condition of reciprocity, the Royal Government may take the decision to return such objects to their country of origin in accordance with international standards and agreements.

### Article 60:

Costs incurred by returning such objects are payable by the State requesting their return.

### Article 61:

Legally imported cultural objects must be declared to the Customs authorities. The receipt issued to the holder by the Customs authorities constitutes proof of declaration and must be produced if the object is re-exported.

## Section 11: Legal protection and penal clauses

### Article 62:

Decisions made by the competent authority in accordance with this law may be contested by recourse to the relevant legal authority.

### Article 63:

(a) A sentence of imprisonment of a minimum of six months and a maximum of five years and a fine equal to the value of the cultural object in question, to be determined by expert opinion, shall be imposed on anyone who, through negligence:

- alienates, moves, destroys, modifies, alters, repairs or restores a registered cultural object inscribed in the inventory without respecting the obligation to inform the authorities in accordance with Article 9, paragraph 1;

APSARA - Law protecting cultural heritage ... commercial purposes, with acknowledgement of UNESCO Cultural Heritage Laws Database as the source (© UNESCO).

- alienates cultural property proposed for classification or classified without respecting the obligations entailed by Article 21 and Article 28, paragraph 2.
- moves, destroys, alters, modifies, repairs or restores, without authorization, cultural property proposed for classification or classified (Article 23, paragraph 1);
- fails to ensure the protection of classified cultural property of which he or she is the owner (Article 25, paragraph 1);
- carries out or attempts to carry out, without authorization, work subject to the regulations on authorization under the terms of Articles 31 and 40;
- fails to fulfill the obligations entailed by Articles 33 and 42;
- fails to declare cultural property discovered during construction or other work and fails to stop that work (Article 37);
- exports or tries to export, without authorization, a cultural object (Article 51 and Article 56)
- fails to comply with the conditions implied by a temporary export as provided in Article 55 (2);
- illegally imports a cultural object (Article 58);
- fails to declare to the Customs authorities the legal importation of a cultural object (Article 61, paragraph 1).

(b) The penalty shall be imprisonment for a minimum of two and a maximum of eight years and a fine equal to two times the value of the object in question, to be determined by expert opinion, if the offender was acting intentionally. In certain cases concerned in (a) and (b) above, the offender shall be subject to only one of these types of penalties, either imprisonment or fine.

**Article 64:**

The civil and administrative sanctions provided for in Articles 21, 22, 35, 49, 56, 59 as well as penal sanctions provided for in Article 63, may be applied.

**Article 65:**

Offenses shall be evidenced by reports made by investigators of the Prosecutors Office and by any qualified authorities, especially Customs officials having taken oath and curators or other staff of museums open to the public who have been appointed and have taken oath for that purpose.

# Chapter 3 - Final provisions

**Article 66:**

All provisions contrary to the present Law shall be considered null and void.

**Article 67:**

commercial purposes, with acknowledgement of UNESCO Cultural Heritage Laws Database as the source (© UNESCO).

This Law shall be promulgated without delay.

Phnom Penh, 25 January 1996

Signed: Norodom Sihanouk

[Back](#)